### In the Matter of the Welfare of M.A.K., Child.

### No. C9–03–16.

Court of Appeals of Minnesota.

Aug. 19, 2003.

John M. Stuart, State Public Defender, Ann McCaughan, Assistant Public Defender, Minneapolis, MN, for appellant M.A.K.

Mike Hatch, Attorney General, St. Paul, MN; and Alan L. Mitchell, St. Louis County Attorney, Angela K. Shambour, Assistant County Attorney, Duluth, MN, for respondent.

Considered and decided by SCHUMACHER, Presiding Judge, RANDALL, Judge, and KALITOWSKI, Judge.

## OPINION

RANDALL, Judge.

Appellant M.A.K. challenges the district court's refusal to suppress the self-incriminatory statements he made to police during an in-school interview. Appellant asks this court to reverse the finding that he committed third-degree burglary and the subsequent adjudication of delinquency.

## FACTS

On July 31, 2001, police received a report that fourteen-year-old M.A.K. had taken his stepfather's car without permission, had driven it without a license, and had been in an accident. M.A.K.'s stepfather made the police report based on a message from M.A.K.'s father, with whom M.A.K. had spent the night. On October 10, police officer Janine Pauly and a police intern went to M.A.K.'s school to speak with him about the incident. Although police had the permission of M.A.K.'s stepfather to interview him, they had not spoken with either of his biological parents. M.A.K. was taken from his classroom to the school police liaison office. He was told that he was not under arrest and that his stepfather had given his permission for the interview. M.A.K. was not told that he did not have to talk to police or answer questions and was not given a Miranda warning. During the interview, M.A.K. admitted that he had taken the car without permission or a license and that he had crashed it. At no time during the interview did M.A.K. ask to leave or to speak with a parent. At the end of the interview, M.A.K. filled out a written statement regarding the incident and was given a hall pass to return to class.

On October 29, police once again went to interview M.A.K. at his school. This time, they were investigating reports that M.A.K. had been involved in burglarizing at least one garage with some other boys. Although police had attempted to contact M.A.K.'s mother, they had not actually spoken with any of his parents before interviewing him. During the interview, M.A.K. admitted that he had been present at the scene of one burglary and that the other boys had taken some beer from a garage.

Juvenile delinquency petitions were filed charging M.A.K. with one count of taking a motor vehicle, one count of driving without a license, and one count of third-degree burglary. At contested Rasmussen hearings, M.A.K. moved to suppress the statements he made to police during both the in-school interviews as having been made in custody, without a proper Miranda warning, and involuntarily. These motions were denied after the officers involved in the interviews testified that M.A.K. had been calm and had willingly answered questions. The officers classified the interviews as non-custodial. M.A.K. testified that he had not thought he was free to leave and that he felt he had to answer all of the officers' questions. Both matters proceeded to trial.

A burglary trial was held July 15, 2002. Officer Kelly Greenwalt testified that she had interviewed M.A.K. regarding a garage burglary. Greenwalt testified that M.A.K. told her he had gone "into" the garage with the other boys and had taken three six-packs of beer from a refrigerator inside. One of M.A.K.'s friends also testified that M.A.K. had gone into the garage and had taken the beer. M.A.K. testified that he told Greenwalt he went "to" the garage, not "into" it, and that he had only carried the beer after the other boys brought it out. The court found that M.A.K. committed third-degree burglary by order dated July 15, 2002.

On November 13, a trial was held on the charges of auto-theft and driving without a license. M.A.K.'s stepfather testified that he received a call from his wife (M.A.K.'s mother) while he was at work, telling him that M.A.K. had taken the car and crashed it and had spent the night at his father's house. M.A.K.'s mother learned this information from a message M.A.K.'s father left on her answering machine. When his stepfather confronted him later, M.A.K. admitted that he had crashed the car. M.A.K.'s stepfather also revealed that

M.A.K. had taken the car without permission on two other occasions. Officer Janine Pauly also testified that, during the in-school interview, M.A.K. admitted he took the car.

The court found that the evidence established beyond a reasonable doubt that M.A.K. had taken the car without permission and had driven it without a license. A dispositional hearing was held immediately for both cases. M.A.K.'s probation officer recommended that he be adjudicated delinquent on both the burglary charge and the auto-theft charge, that he serve nine months of probation, that he be ordered to avoid contact with the other boys involved in the burglary, and that he pay restitution to his victims. M.A.K.'s attorney asked that the court stay adjudication on the auto-theft charge pending M.A.K.'s completion of his probation. M.A.K.'s stepfather and father joined this request, out of concern that two juvenile felony adjudications would give M.A.K. a criminal history point. The district court chose to adjudicate M.A.K. delinquent on the burglary charge only, staying adjudication on the auto-theft and driving without a license charges pending a nine-month period of probation. M.A.K. was also ordered to pay restitution and to stay away from the boys involved in the burglary.

## ISSUE

Did the district court err in admitting appellant's statements to police?

## ANALYSIS

### I.

■ When reviewing pretrial orders regarding suppression motions, this court may review the record independently to determine whether the district court erred in not suppressing evidence as a matter of law. *State v. Harris,* 590 N.W.2d 90, 98

(Minn.1999). If the district court erred, appellant is entitled to a new trial unless the error was harmless beyond a reasonable doubt. *State v. Juarez,* 572 N.W.2d 286, 291 (Minn.1997). An important factor in analyzing harmless error is whether, without the evidence erroneously admitted, the remaining evidence would be sufficient to compel a finding of guilt beyond a reasonable doubt. *Id.*

■ Appellant M.A.K. argues that the district court erred by admitting the statements he made to police during the in-school interviews because: (1) the interviews were custodial and he was not given a Miranda warning; and (2) the statements were not made voluntarily. We agree.

■ To determine whether a Miranda warning is required, this court must first determine whether the person questioned was in custody at the time. *State v. Edrozo,* 578 N.W.2d 719, 724 (Minn.1998). First, we consider the general circumstances surrounding the interrogation; and second, we determine whether, in light of the circumstances, a reasonable person would have felt free to leave or otherwise terminate the interrogation. *In re Welfare of G.S.P.,* 610 N.W.2d 651, 657 (Minn. App.2000). We review the factual determination of circumstances under a clearly erroneous standard, but the ultimate determination of custody is subject to independent review. *State v. Wiernasz,* 584 N.W.2d 1, 3 (Minn.1998).

A number of cases suggest factors to consider when determining whether a juvenile is in custody for Miranda purposes. These include the child's age, intelligence, education, experience with the law, the warning given, and the presence or absence of the child's parents. *In re Welfare of D.B.X.,* 638 N.W.2d 449, 453 (Minn.App. 2002).

Here we have a 14–year old boy, by all accounts, a child of average intelligence and maturity for his age. Before the October 10 interview, M.A.K. had no experience with the police or with police questioning. M.A.K. was removed from his class and escorted to the school police liaison office without being told why. Upon arrival, he was told he was not under arrest, but was not told that he was free to leave or that he was free to refuse to answer questions. He was not asked if he wished to speak with his parents or return to class. M.A.K. was given a hall pass and allowed to return to class only after police were satisfied with his statements.

Under the circumstances, we cannot say that a reasonable person in M.A.K.'s position would have understood that he was free to leave and did not have to answer any questions. We conclude that M.A.K. was in custody during the in-school interviews, and should have received a full Miranda warning before being questioned. Because he did not receive that warning, the admission of his statements to police regarding both the auto theft and the burglary was error.

▪ Even had M.A.K. not been in custody during the interviews, we do not believe that his statements were made voluntarily, and they should have been suppressed for that reason. A confession is not voluntary if the actions of the police, combined with the circumstances, are so coercive and intimidating that the defendant is unable to make a free-will decision. *State v. Jones*, 566 N.W.2d 317, 326 (Minn. 1997). The actions of police need not be threats or deliberate intimidation to be coercive. *State v. Riley*, 568 N.W.2d 518, 525 (Minn.1997). Although the police here were not forceful or purposefully intimidating toward M.A.K., combined with the circumstances described above, M.A.K.'s will was almost certainly overcome.

M.A.K. did not understand that he was free to leave. He did not know that he could ask to talk to his parents. He was escorted to the school police liaison office, and he could not leave the office without a hall pass, unless he chose to risk school discipline. Under the circumstances, a child like M.A.K. could easily be intimidated into confessing or making incriminating statements against his will. Because M.A.K.'s statements were made involuntarily, while his "will was overborne," they should have been suppressed, and their admission was error. *Riley*, 568 N.W.2d at 525.

Having determined that the admission of the statements was error, we must next determine whether that error was harmless beyond a reasonable doubt and whether without them, the evidence could support a finding of guilt. *Juarez*, 572 N.W.2d at 291.

▪ We first note that appellant does not specifically challenge the finding that he committed the acts of auto theft and driving without a license, presumably because the district court stayed adjudication on those charges. Thus, we leave the stay of adjudication in place. Respondent has asked this court to review the district court's decision to stay adjudication on the auto-theft charge. Respondent's request is denied. There is no provision for a cross-appeal by the state in a juvenile's appeal, and the state did not find one. *See* Minn. R. Juv. P. 21.03. Moreover, pursuant to Minn. R. Juv. P. 21.04, subd. 1, the state is limited in what delinquency dispositions it may appeal. The rule allows the state to appeal delinquency dispositions *only* in extended jurisdiction juvenile (EJJ) cases. *Id.* This court has strictly construed the rule and has determined that the state is not permitted to appeal any other dispositions in non-EJJ cases. *In re Welfare of S.H.R.*, 570 N.W.2d 704,

705 (Minn.App.1997). Because this is not an EJJ case, respondent cannot challenge the stayed adjudication on this charge. We give respondent's argument no further consideration.

 As to the auto theft, M.A.K. confessed to his father and to his stepfather that he had taken his stepfather's car. The same night, his father left an answering-machine message at his mother's home explaining what M.A.K. had done. Even had his statement to police been suppressed, the testimony of his stepfather and the tape of the answering-machine message can support a finding that M.A.K. committed that crime. We conclude the error in admitting M.A.K.'s confession to police was not substantial; the finding of delinquency on the auto-theft charge resulting in a stay of adjudication, is affirmed.

However, the error in admitting M.A.K.'s statements, with respect to the third-degree burglary charge, was substantial, prejudicial, and not harmless beyond a reasonable doubt. Without M.A.K.'s statements to police, the state had little evidence to compel a finding that M.A.K. was guilty of burglary. The state presented the testimony of J.E., one of M.A.K.'s alleged accomplices in the burglary. This boy testified at the trial that M.A.K. had gone into the garage with the other boys to steal the beer. As appellant correctly argues, a conviction cannot be had on the uncorroborated testimony of an accomplice. Minn.Stat. § 634.04 (2002). The corroborating evidence must show more than the mere fact that the crime occurred. *Id.* Here, the state presented no corroborating evidence, either physical or testimonial, other than M.A.K.'s statement to police. The state may or may not have made a case that M.A.K. was a minor in possession of beer. They did not make a case with admissible evidence that he committed burglary.

On the burglary charge, because the statement should have been suppressed, and because suppression leaves the state only with the uncorroborated testimony of an accomplice, the juvenile adjudication for third-degree burglary is vacated.

## DECISION

Because M.A.K. was subjected to custodial interrogations without receiving a Miranda warning, and because his statements during those interrogations were not made voluntarily, the district court erred in admitting those statements as evidence. The finding that M.A.K. committed the crime and the adjudication of delinquency on the burglary charge are not supported by the remaining evidence and are, therefore, reversed and vacated. The district court's finding that M.A.K. committed the crime and stay of adjudication on the auto-theft charge are affirmed.

**Affirmed in part and reversed in part.**